**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Chester JONES, Delores Watkins and Raymond Jones, Defendants-Appellants.**

**Nos. 14969, 14970, 14971.**

United States Court of Appeals Seventh Circuit.

Nov. 16, 1966.

Richard E. Gorman, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., George E. Faber, Chicago, Ill., John

Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY, Senior Circuit Judge, and SCHNACKENBERG, Circuit Judge.

HASTINGS, Chief Judge.

Defendants-appellants, Chester Jones (Jones), Delores Watkins, and Raymond Jones were convicted, following a jury trial, on a five-count indictment for violations of United States narcotics laws, 21 U.S.C.A. § 174 and 26 U.S.C.A. § 4705 (a).[1]

Count one of the indictment charged a conspiracy to receive and sell narcotics; counts two to five charged Chester Jones and Delores Watkins with unlawful reception, concealment, facilitation of transportation, and sale of narcotics. Raymond Jones was included in counts two and three.

On appeal, it is urged that Jones was deprived of his constitutional rights to a fair trial and due process by the trial court's appointment of counsel to defend Jones, over his objection, and by the trial court's refusal to permit him to testify. It is also contended that all the defendants-appellants were prejudiced by the admission of evidence gained through the use of an eavesdropping device.

On the day the indictment was filed, November 6, 1963, Jones was confined in the United States prison at Leavenworth, Kansas. A writ of habeas corpus ad prosequendum was issued, and on July 1, 1964, Jones appeared before the trial court and entered a plea of not guilty.

On July 27, 1964, attorney Jack Welfeld was appointed to represent Jones until such time as Jones obtained an attorney of his choice, for Jones had represented to the court that he wished to obtain his own private counsel.

On August 10, 1964, on motion of Jones and his co-defendants, the trial court vacated the order appointing Welfeld as attorney and ordered the cause to be set for trial on September 21, 1964. Jones and his co-defendants were directed to obtain counsel of their own choice, but the court also entered a contingent order that should Jones and his co-defendants appear without qualified counsel, Welfeld was to appear at trial in their behalf.

On the same day, August 10, 1964, Welfeld wrote Jones a letter informing Jones of the substance of a number of indictments against Jones. Welfeld also wrote:

"While I am under no obligation to furnish this information, I have spent considerable time in gathering it so that you might see how foolish your actions are. You are going to trial on September 21, 1964 on a very serious charge and I strongly urge that you hire an attorney immediately or reconsider the offer of the court to have me defend you.

"Judge Perry made it very clear that he will not grant a continuance in the event you hire an attorney who comes

---

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000." 21 U.S.C.A. § 174.

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate." 26 U.S.C.A. § 4705(a).

in at the last minute and asks for time to acquaint himself with the case. Whether you accept my services or retain the services of another attorney is immaterial to me, but I advise you to retain some attorney without any further delay for your own protection."

Welfeld certified that he had delivered the original of this letter to Jones. In his certification he stated: "I conferred with him [Jones] and again stated that whatever he decides to do—he should obtain counsel immediately."

On September 26, 1964, following a jury trial in which Jones was defended by Welfeld, all defendants-appellants were found guilty as charged in the indictment. Their motions for a new trial, however, were granted, and a second trial began on September 28, 1964. Again over his objection, Jones was defended by Welfeld.

During the course of the second trial, after the Government rested and the defense was asked to present its evidence, and while the jury was retired, Welfeld advised the court that against his recommendation, Jones wished to take the stand. Jones then represented to the court that he had evidence he would present, relating to motive and intent, that the evidence was not available in court, but that he would obtain it by the following morning. The court, fearing that the Government would elicit disclosure of Jones' prison sentence and previous criminal record for impeachment purposes, decided not to allow Jones to take the stand against his counsel's advice, unless Jones revealed the nature of the evidence. But the court then reconsidered and advised Jones that he could take the stand to testify in his own behalf, if he had evidence to present. Jones refused on the ground that the evidence was not then available to him.

After the jury returned, the court asked Jones if he wished to take the stand. Jones indicated that he would not take the stand because he did not then have evidence to present, although he stated he might possibly have it the next day.

While it is true that included within the undoubted due process right of an accused to counsel is a fair opportunity for the accused to secure counsel of his own choice, Chandler v. Fretag, 348 U.S. 3, 9–10, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Powell v. State of Alabama, 287 U.S. 45, 53, 68–69, 53 S. Ct. 55, 77 L.Ed. 158 (1932), the trial court did not deny Jones the right to select counsel of his choice. Rather, the trial court was careful to insure that Jones would have an attorney to defend him.

Jones had no right to refuse appointed counsel without a showing that he had other counsel, without a valid waiver of counsel, or without giving an adequate reason for the dismissal of his appointed counsel. See Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363 (1959). Cf. Goforth v. United States, 10 Cir., 314 F.2d 868 (1963). See also United States v. Bentvena, 2 Cir., 319 F.2d 916 (1963), cert. den. sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); Dearinger v. United States, 9 Cir., 344 F.2d 309 (1965).

We find no merit in the contention that Jones was denied his constitutional rights by the trial court's appointment, over his objection, of counsel to defend him. From the record, it is clear that Jones, who does not contend that he was not able to obtain counsel of his choosing or that circumstances justifiably prevented him from seeking counsel, had more than sufficient notice and more than ample opportunity to obtain his own counsel, had he wished to do so. On a number of occasions, the court informed him that he could have his own counsel. His appointed attorney urged him to obtain his own counsel, if he so desired.

Jones has never given any indication that he had made or was making efforts to obtain his own counsel. Jones, without excuse, but with forewarning and

knowledge of the necessity to choose, simply failed or refused to do so.

■ Furthermore, there was no deprivation of Jones' constitutional rights in the appointment of Welfeld. Assuming Welfeld was for some reason personally unsatisfactory to Jones, Jones did not request appointment of other counsel. From the record, it appears that Welfeld defended Jones proficiently, with a sensitive dedication to the protection of Jones' constitutional rights.

With respect to the alleged denial of Jones' right to testify, the record discloses that the trial court ruled that Jones could take the witness stand, if he wished to. Jones, however, refused to take the stand at that time, in effect requesting a continuance until the next day, by which time he claimed he would have his evidence.

Jones' claim cannot be viewed out of context. Jones had previous experience with courts and had a previous conviction. Jones had been charged under a number of different indictments. He had adequate notice of the date of trial. He had access to and the services of a qualified, court-appointed attorney. He was standing trial a second time, following a complete first trial in which he was found guilty.

Finally, at the time of denial of continuance, Jones refused to indicate to the court the nature and substance of the evidence he alleged he would produce.

■ A denial of a continuance is within the discretion of the trial court, and the question whether a denial is so arbitrary as to violate due process depends on the circumstances present in each case, particularly in the reasons presented to the trial court at the time the request for continuance is made. Ungar v. Sarafite, 376 U.S. 575, 589–590, 84 S. Ct. 841, 11 L.Ed.2d 921 (1964); United States v. Echeles, 7 Cir., 222 F.2d 144, 153 (1955), cert. den., 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739 (1955).

■ There is no substance in Jones' claim. The trial court did not refuse to permit Jones to testify and the trial court did not violate due process in refusing to grant a continuance so that Jones might produce his alleged evidence. Nothing in the circumstances surrounding the denial indicate that there was any unfairness involved in the denial.

■■ The final contention on appeal, that Jones and his co-defendants were prejudiced by the admission into evidence of conversations obtained through the use of an eavesdropping device, in violation of Illinois law, is not meritorious. Federal and not state law is applicable here. We have previously held that evidence obtained by the use of devices to overhear conversations is not thereby rendered inadmissible in a federal court. United States v. Pullings, 7 Cir., 321 F.2d 287, 295 (1963); United States v. Vittoria, 7 Cir., 284 F.2d 451, 455 (1960).

The court wishes to express its appreciation to Mr. Richard E. Gorman, of the Chicago bar, court-appointed attorney for all defendants-appellants on appeal, for his services rendered in behalf of defendants-appellants.

The judgment of conviction appealed from is affirmed.

Affirmed.