Victor HOOD, on behalf of himself and all other members of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, Plaintiff-Appellee,

v.

JOURNEYMEN BARBERS, HAIR-DRESSERS, COSMETOLOGISTS AND PROPRIETORS INTERNATIONAL UNION OF AMERICA, etc., et al., Defendants-Appellants.

No. 71–1534.

United States Court of Appeals, Seventh Circuit.

Jan. 10, 1972.

1348

John E. Armstrong, Madison, Wis.,
Philip D. Pecar, Indianapolis, Ind.,

Sherman Carmell, Sheldon M. Charone, Chicago, Ill., for defendants-appellants; Carmell & Charone, Chicago, Ill., of counsel.

Carl J. Meyer, Kenneth C. Kern, Indianapolis, Ind., Kenneth C. Kern & Associates, Rhoads, Linder, Meyer & Buehl, Indianapolis, Ind., for plaintiff-appellee.

Before MAJOR [*], Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal is from two orders appointing a permanent receiver over the Barbers, Beauticians, and Allied Industries Pension Fund and providing for notice thereof. This $25,000,000 trust fund was established in 1966 by the International Union.[1]

On August 7, 1970, plaintiff filed a class suit in the Circuit Court of Marion County, Indiana, on behalf of himself and all other members of the Union seeking the appointment of a receiver over the pension fund. Defendants included the Union, the members of its General Executive Board, and the members of its Pension Plan Committee. Plaintiff alleged that he was a contributor to the pension fund and that his interest therein was being jeopardized by defendants' mismanagement. He charged the several defendants with numerous acts in breach of their fiduciary duty, including: permitting the pension fund to become actuarially insolvent, misusing pension funds by investing them in highly speculative investments, failing to exercise due care and proper business judgment in handling the fund, loaning fund money to bad risk debtors without possibility of collection, permitting spurious investments (in many of

which an investment consultant was personally interested), allowing $7 million in loans to become delinquent to the extent of $2½ million in principal and $500,000 in interest, failing to maintain the fund on a sound actuarial basis as provided in the pension agreement, and failing to file the reports required by 29 U.S.C. § 431(b) in 1969 and in 1970. In his prayer for relief, plaintiff asked that both the Union and the pension fund be placed into receivership.

On August 11, 1970, defendants filed a removal petition in the district court. The petition asserted that "the district court has original jurisdiction pursuant to 29 USC 185(a), 301–309, 440, 501(b) * * *." On the following day, the Circuit Court of Marion County appointed Merchants National Bank and Trust Company of Indianapolis as receiver of the pension fund. However, in view of the removal, on August 14, the district court entered an order enjoining the state court, the receiver and others from taking any action under the order appointing a receiver. The district court also restrained the removal of the assets of the pension fund from Indiana and as a protective measure placed certain restrictions on their use.

On March 11, 1971, after previously hearing testimony on March 4, the district court entered an order finding that the pension fund was "actuarially unsound and functionally insolvent * * *." The court also found that a proper class action existed, and provided for notice to the class. The court froze the assets of the fund until further hearing, when the Union and pension fund were to show cause why the court should not place both of them in receivership.[2]

---

[*] Before Judge Major's January 4, 1972, death, he had approved this opinion and joined therein.

[1]. The Union is also known as the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America. The Union's application for a stay order stated that the fund's assets

amounted to $25,000,000 and that 60,000 members held interests in the fund.

[2]. On March 16, 1971, the Union filed a notice of appeal from the March 11, 1971, order of the district court, but that was done in aid of the Union's March 30, 1971, emergency motion for stay which we denied on the next day, thus aborting that

Subsequently, further evidence was submitted on behalf of plaintiff to show that the fund was mismanaged and actuarially unsound. Thus it appeared that its mortgage loans had deteriorated to a point where $4 million was set aside to provide for deficiencies and that the fund had a 12% loss for the year ending February 28, 1969, and a 9% loss for 1970. Furthermore, the bonds required by statute[3] for the pension fund officers were cancelled effective April 6, 1971, and a subsequent extension of the bonds was to expire on April 22, 1971. Accordingly, on April 16, 1971, the court entered an agreed order retaining jurisdiction over the parties and subject matter and providing for the appointment of a monitor of the affairs of the pension fund.[4]

At the request of the defendants, on April 29, 1970, the court appointed former Senator Capehart as temporary receiver of the assets of the pension fund. The order contained a clause requiring the defendants to show cause why the temporary receivership should not be made permanent, and the matter came on for a hearing on June 22, 1971. At the hearing, plaintiff's counsel announced that he was prepared to show that the pension fund surety bond had been cancelled effective June 28, 1971. Defense counsel stated that an exorbi-

tant premium of $176,000 was required. He then called Thomas McFadden, a representative of the New Hampshire Insurance Company, who testified that his purported signature on that company's surety bond was in fact someone else's. Thereafter, defense counsel admitted that defendants had received a notice of cancellation of the bond effective June 28, 1971. Consequently, on June 29, 1971, the court entered an order (for June 22, 1971) appointing Senator Capehart as permanent receiver of the pension fund, and on July 7, 1971, an order was entered directing supplemental notice to the class by publication in the Union's "Journeymen Barber." This appeal followed.

## Jurisdiction of the District Court

Although defendants themselves removed this case to the district court, they now contend that it lacks jurisdiction to appoint a receiver over the pension fund. Plaintiff advances several purported jurisdictional foundations[5], but since we conclude that Section 501(b) of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 501(b)) is an adequate jurisdictional ground for the district court's order, we need not assess the sufficiency of the others.

Section 501(a)[6] imposes fiduciary responsibility upon "[t]he officers, agents,

---

appeal. The present appeal is from the June 29 and July 7, 1971, orders appointing a permanent receiver over the pension fund and providing for notice thereof. (See pp. 3 and 25 of Union's brief.)

3. *See* 29 U.S.C. §§ 308d and 502(a).

4. On April 30, 1971, the court entered an "order for April 16, 1971, Appointing Monitor." Pursuant to this order, Homer E. Capehart was appointed as monitor.

5. In addition to 29 U.S.C. § 501(b), plaintiff relies on 29 U.S.C. § 308d(b) (in conjunction with 28 U.S.C. § 1331), 29 U.S.C. § 308(c) and (g), 29 U.S.C. § 186(e), 29 U.S.C. § 185(a), 29 U.S.C. § 502, and pendent jurisdiction.

6. 29 U.S.C. § 501(a) provides:
   "The officers, agents, shop stewards, and other representatives of a labor or-

ganization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever ca-

shop stewards, and other representatives of a labor organization * * * in relation to such organization and its members as a group." Subsection (b)[7] confers jurisdiction upon any United States district court or state court of competent jurisdiction to entertain a suit by a union member alleging breach of fiduciary duties imposed by subsection (a) and to award "damages, * * * an accounting or other appropriate relief for the benefit of the labor organization."

Defendants' argument against finding subject matter jurisdiction under Section 501(b) consists in the conclusory, unarticulated assertion that Section 501(b) could only be a touchstone for jurisdiction over the defendant International Union and not over the pension fund. Presumably defendants meant to say that the defendant members of the Pension Plan Committee are not as such within the purview of Section 501(a).

The pension fund is not a collectively bargained one; its Committee has no management appointees nor joint appointees.[8] Since the fund is an exclusively union undertaking, its entire Committee would certainly seem to be "officers, agents * * * [or] other representatives of a labor organization" within the sweep of Section 501(a).[9] Unless some Congressional intent can be gleaned to exclude union-appointed members of a pension fund committee from the broad language of Section 501(a), they should be held to the statutory duty in the exercise of their office.

The argument against including union pension or welfare funds within the operation of Section 501(a) relies on the explicit mention of "a trust in which a labor organization is interested" as within the coverage of the bonding re-

---

pacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

7. 29 U.S.C. § 501(b) provides:
   "When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

8. As provided in the Pension Fund Agreement, in accordance with the Constitution of the International Union, the Pension Plan Committee is comprised of the General President and the General Secretary-Treasurer of the International Union and three members appointed by the General Executive Board of the International Union upon the joint recommendation of the General President and the General Secretary-Treasurer.

9. 29 U.S.C. § 402(q) provides:
   " 'Officer, agent, shop steward, or other representative,' when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried nonsupervisory professional staff, stenographic, and service personnel."

quirement in 29 U.S.C. § 502(a)[10] and the supposedly conspicuous absence of that phrase in Section 501(a). The definitional Section (29 U.S.C. § 402) clearly shows that a pension or welfare fund is "a trust in which a labor organization is interested." 29 U.S.C. § 402(*l*).[11] Legislative history discloses that while the McClellan amendment to the Senate version of Section 501(a) extended fiduciary responsibility to "a trust in which a labor organization is interested," [12] the final enactment did not employ this terminology. This absence is said to be pregnant with the meaning that Congress designedly left pension and welfare funds outside of the protection of the new fiduciary responsibility.[13]

When language is clearly broad enough on its face to encompass a specific coverage, confidence cannot readily be reposed in an opposing argument mustered from legislative silence. As in most instances, the silence here, manifested in Congress' failure to use the same terminology as appears in Section 502(a) (note 10, *supra*), is ambiguous. We find no statement by a member of Congress that the actual variance between Sections 501(a) and 502(a) was intended to exclude pension or welfare trusts from the operation of the fiduciary principle. Quite the contrary appears. The fiduciary Section finally enacted is precisely that found in the Landrum-Griffin bill approved by the

10. 29 U.S.C. § 502(a) provides:

"Every officer, agent, shop steward, or other representative or employee of any labor organization (other than a labor organization whose property and annual financial receipts do not exceed $5,000 in value), or of a trust in which a labor organization is interested, who handles funds or other property thereof shall be bonded for the faithful discharge of his duties. The bond of each such person shall be fixed at the beginning of the organization's fiscal year and shall be in an amount not less than 10 per centum of the funds handled by him and his predecessor or predecessors, if any, during the preceding fiscal year, but in no case more than $500,000. If the labor organization or the trust in which a labor organization is interested does not have a preceding fiscal year, the amount of the bond shall be, in the case of a local labor organization, not less than $1,000, and in the case of any other labor organization or of a trust in which a labor organization is interested, not less than $10,000. Such bonds shall be individual or schedule in form, and shall have a corporate surety company as surety thereon. Any person who is not covered by such bonds shall not be permitted to receive, handle, disburse, or otherwise exercise custody or control of the funds or other property of a labor organization or of a trust in which a labor organization is interested. No such bond shall be placed through an agent or broker or with a surety company in which any labor organization or any officer, agent, shop steward, or other representative of a labor organization has any direct or indirect interest. Such surety company shall be a corporate surety which holds a grant of authority from the Secretary of the Treasury under the Act of July 30, 1947 (6 U.S.C. 6–13), as an acceptable surety on Federal bonds."

11. 29 U.S.C. § 402(*l*) provides:

" 'Trust in which a labor organization is interested' means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the government body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries."

12. *See* 105 Cong.Rec. 6523, 6527–28 (1959). Senator McClellan's amendment derived from an earlier bill he had introduced without success. S. 1137, 86th Cong., 1st Sess. (1959). Senator Javitz' amendment giving union members the right to sue in federal or state court for breach of their fiduciary duties was also accepted. 105 Cong.Rec. 6529 (1959).

13. See Wollett, Fiduciary Problems Under Landrum—Griffin, 13th Annual NYU Conference on Labor, 267, 269; Ostrin, Fiduciary Obligations of Union Officers: A Critical Analysis of Section 501, Symposium on the Labor-Management Reporting and Disclosure Act of 1959, 528, 529 (Slovenko ed. 1961).

House, and that bill in turn employs fiduciary language identical to that of the Elliot bill, for which the Landrum-Griffin bill was accepted by the House as a substitute.[14] That the House version ultimately enacted was not seen as changing or restricting the coverage of the Senate bill is indicated by the statement of Congressman Elliot and other members of the House Committee on Education and Labor that the Elliot bill extended "the fiduciary principle to *all* the activities of union officials and other union agents or representatives."[15] Moreover, in comparing the fiduciary Sections of the House version and the McClellan amended Kennedy-Ervin bill, Senator Morse noted that the House version broadened the fiduciary provisions of the Senate bill, imposing a general fiduciary responsibility on all union officials.[16] When Senator Goldwater was commenting on how the conference bill (containing the present Section 501) furthered the objectives of the McClellan Committee's work, he stated under the heading "Legislation to Regulate and Control Pension, Health, and Welfare Funds" :

> "Last year Congress enacted a bill to require filing of reports on the management of union and welfare funds. This year, using the Landrum-Griffin bill's language, we require bonding of officials who handle all union funds, requiring of them high standards of fiduciary responsibility."[17]

As one commentator has observed,[18] there is a logical explanation for the terminological variance between Sections 501 and 502 which falls short of imputing to Congress the dubious intent to exclude pension and welfare funds from the embrace of Section 501. Whereas Section 501 is concerned exclusively with union "officers, agents, shop stewards and [its] other representatives," in creating a trust responsibility, Section 502 which imposes the bonding requirement covers as well "every officer, agent * * * or other representative or employee * * * of a trust in which a labor organization is interested." The coverage of Section 502 extends to trust personnel who may or may not be representatives or appointees of a labor organization. See 29 U.S.C. § 402(*l*). Coverage of all these trust personnel may not have been convenient or possible as a matter of draftsmanship without utilizing the term "trust in which a labor organization is interested."[19] Thus its absence from Section 501 would not imply a restriction on its coverage.

This explanation seems to have the uncomfortable concomitant that while Congress intended to impose fiduciary responsibility on union officials, agents, and representatives in their handling of members' trust funds, it was unwilling to extend the same responsibility to trust personnel generally. Of course, the basic thrust of the relevant branch of the Labor-Management Reporting and Disclosure Act of 1959 was to protect the membership against *union* abuse of its statutorily endowed power.[20] If we are to speculate on Congressional intent, it may well have been thought that ex-

---

14. *Compare* 29 U.S.C. § 501(a) *with* H.R. 8400, 8401, 86th Cong., 1st Sess. § 501 (1959) *and* H.R. 8342, 86th Cong., 1st Sess., § 501 (1959).

15. H.R.Rep. No. 741, 86th Cong., 1st Sess. 681 (1959) reported at 2 U.S. Code Congressional and Administrative News, 86th Cong., 1st Sess. 1959, p. 2480. (Emphasis supplied.)

16. 105 Cong.Rec. 14988 (1959).

17. 105 Cong.Rec. 17903 (1959) ; *see* Dugan, Fiduciary Obligations Under the New Act, 48 Geo.L.J. 277, 293 (1959).

See also Senator Goldwater's remarks under the heading "Legislation to Regulate and Control Union Funds." 105 Cong. Rec. 17903–17904.

18. Collins, Some Additional Comments on the Fiduciary and Bonding Provisions of the LMRDA, 14th Annual NYU Conference on Labor 149, 152 (1961).

19. *Id.*

20. *See* Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819–824 (1960).

tending the federal statutory base for fiduciary responsibility to non-union trustees was too great an incursion into a traditionally state law domain and unwarranted by the union-oriented thrust of the Act.[21] In any event, in our opinion it would be far more anomalous to impute to Congress a deliberate indifference to the need for fiduciary responsibility in the highly critical area of pension and welfare trusts, while it manifestly recognized the need for such responsibility on the part of union officials in all other areas of their activity. It is precisely in the benefit plan area that fiduciary principles would most aptly apply, for not only are significant financial interests of the membership most directly affected, but also pension and welfare trusts are the traditional trust funds where fiduciary principles have always most stringently governed the relationship between administrator and beneficiary.[22]

■■ Faced with what is at most a statutory ambiguity, we will be guided by the purpose of Section 501. The Section, as we see it, was a direct and far-reaching response to the mischief exposed and dramatized by the McClellan Committee. That mischief was the misuse of union funds and property by union officials in its every manifestation. Thus the reach of Section 501 extends to every area in which subversion of the interests of the union membership may be accomplished by union officials or representatives bent on acting in culpable derogation of those interests. Consequently, we hold that a union pension fund committee is accountable under the fiduciary principles of Section 501(a) for its handling of the fund. See Morrissey v. Curran, 423 F.2d 393, 399–400 (2d Cir. 1970), certiorari denied, Segal v. Morrissey, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56; see also Tucker v. Shaw, 308 F.Supp. 1, 8 (E.D.N.Y.1970).

■■ Since the Pension Plan Committee was subject to the duties imposed by Section 501(a), the district court had jurisdiction by virtue of Section 501(b) to entertain plaintiff's suit alleging breach of those duties.[23] The order of the district court appointing a permanent receiver over the pension fund was within the court's jurisdiction under Section 501(b) to award "other appropriate relief for the benefit of the labor organization,"[24] but only if the order was predicated on a proper finding that the Pension Plan Committee had breached its fiduciary duty.

In his order appointing a permanent receiver, the trial judge explicitly found that the members of the Pension Plan Committee had breached their fiduciary duties in the management of the pension fund's assets. This conclusion was buttressed by well-supported, specific findings of irresponsible management of the fund's assets resulting in actuarial unsoundness and functional insolvency, of dealings smacking of dishonesty,[25] and of

21. While it is true that union officials and representatives are subject to state law fiduciary principles, Congress plainly determined that as to them federal embodiment of those principles was necessary for effective enforcement. *See* Cox, *supra*, note 20 at 827–828.

22. *See* Dugan, *supra*, note 17 at 294.

23. Section 501(b), *supra*, note 7, requires as a condition of jurisdiction that the plaintiff allege failure or refusal of the labor organization or its governing board or officers to sue or secure relief upon request. However, like the demand requirement of Rule 23.1 of the Federal Rules of Civil Procedure, such a request is not always necessary. *See* 3B J.

Moore, Federal Practice ¶ 23.1.19, at 23.1–253 to 23.1–255 (2d ed. 1969). Here the defendants expressly predicated removal upon Section 501(b) and have never objected to any failure of plaintiff to request relief. In any event, when the proceedings in the district court began to unfold, there was no doubt but that such a request would have been an idle ceremony.

24. The propriety of the permanent receivership order under the facts of this case is discussed *infra*.

25. The district court found that the Pension Plan Committee retained and acted upon the advice of its investment counselor knowing him to be compensated by

violating the bonding requirement of 29 U.S.C. § 502(a).

■■ The content of the fiduciary obligation in Section 501(a) is outlined only in broad principles.[26] Professor Cox has authoritatively stated that "The principles stated in section 501(a) were drawn from the Restatement of Agency in an effort to incorporate the whole body of common law precedent defining the fiduciary obligations of agents and trustees with such adaptions as might be required to take into account 'the special problems and functions of a labor organization * * *.' "[27] Where, as here, a union undertakes to administer a pension or welfare fund, it administers the traditional trust and hence has entered the domain where common-law trust principles would seem most precisely to apply. The burden should be on the union to show that something peculiar to a labor organization's administration of these trust funds justifies modification of the traditional principles. But we are not faced with a nice dispute about the content of the governing law. At a minimum, there must be safe, honest, loyal, and conscientious management of the fund.[28] Because the Pension Plan Committee patently did not satisfy these most rudimentary of fiduciary duties, it breached the duties imposed by Section 501(a). Furthermore, Article II, Sections 2.01 and 2.02 of the Pension Fund Agreement require that the Pension Plan Committee apply pension funds "exclusively" to provide for payment to the beneficiaries and pay the cost of establishing and administering the fund and that it keep reserves adequate to maintain the fund "on a sound actuarial basis." Failure to meet these requirements is a failure to expend monies in accordance with a resolution adopted by a governing body under the Union's Constitution (Article VIII), and therefore clearly in breach of the fiduciary duties in Section 501(a).

*Failure to Continue the June 22, 1971, Hearing*

■ Defendants contend that the district court's failure to continue the June 22, 1971, hearing on why the temporary receivership should not be made permanent was a denial of due process of law or prejudicial abuse of discretion. In response to the April 29th order to show cause why the temporary receivership should not be made permanent, defendants merely filed a petition on May 20, together with a New Hampshire Insurance Company surety bond for $500,000 allegedly signed by T. J. McFadden. When the hearing on the rule to show cause took place on June 22, defendants called Thomas J. McFadden, an Indiana agent of the New Hampshire Insurance Company, as its only witness. McFadden testified that his signature on the bond was a forgery. Thereafter, defendants' counsel admitted that there was a cancellation notice for the bond effective as of June 28, 1971. Confronted by such a situation, small wonder that a continuance was denied.

The district court expressly concluded that a continuance was denied because the defendants had been given notice of the hearing and presented no valid reason for a continuance. This conclusion was justifiable because defendants' counsel did not state the names of absent witnesses whose testimony might be pertinent, what testimony they might offer, nor why they were not then available. Moreover, defendants chose not to call Wisconsin insurance officials who were tendered as witnesses on June 22. Therefore, no abuse of discretion has been shown, nor was due process of law

those borrowing money from the pension fund and not by the fund. The court further found the Committee to have made an unsecured loan to a corporation of which the major stockholders were union officials, such loan now being delinquent in its entire principal amount.

26. *See* Highway Truck Drivers v. Cohen, 182 F.Supp. 608, 617 (E.D.Pa.), affirm-

ed, 284 F.2d 162 (3d Cir. 1960), certiorari denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744.

27. Cox, *supra*, note 20 at 828.

28. *See id;* 105 Cong.Rec. 17900 (remarks of Senator Kennedy) ; Dugan, *supra*, note 17 at 289–290, 294; *see generally* Scott, The Fiduciary Principle, 37 Calif.L.Rev. 539 (1949).

denied. United States v. Jones, 369 F. 2d 217, 220 (7th Cir. 1966).[29]

*Propriety of Permanent Receivership Order*

■ Defendants attack the permanent receivership order because, they say, the following three conditions were not met:

1. They were not afforded a full trial;
2. Plaintiff had a remedy at law;
3. There was no fraud or imminent danger of the property being diminished in value.

In our view, these three conditions were satisfied. First of all, defendants concede that evidence was taken on seven different occasions before the permanent receiver was appointed. As early as March 4, 1971, the district court put defendants on notice that they must show cause why a receiver should not be appointed for the pension fund. Moreover, the order of April 29, 1971, appointing a temporary receiver, entered at the request of defendants, required them to show cause on or before June 1, 1971, why the temporary receivership should not be made permanent. The show cause order came on for hearing on June 22nd when defendants were given an opportunity to present their evidence. Instead, the only evidence they adduced on that date showed that the proposed surety bond was fraudulent. Since they had been given an adequate opportunity for a full trial, the first condition was satisfied.

Similarly, defendants have not shown why the plaintiff had an adequate remedy at law. As to the third condition, evidence had been adduced by plaintiff showing mismanagement of the pension fund resulting in large losses. Finally, there was a failure to meet statutory bonding requirements. Therefore, we conclude that the district court acted well within its discretion in appointing a permanent receiver.

Defendants also attack the findings and conclusions in the June 29th permanent receivership order. Initially, they criticize finding 7 that the pension plan "is actuarially unsound and functionally insolvent." But this finding was amply supported by testimony of John W. Flood who was in charge of the employee benefit counseling division in the Chicago office of Peat, Marwick & Mitchell, accountants; and of John W. Vilberg, Chief of the Employee Welfare Fund's Division of the Office of the Commissioner of Insurance of Wisconsin. Their testimony was corroborated by actuarial studies of the pension fund and by an examination report of the fund, both of which were received in evidence.

Next, defendants attack findings 9–19 relating to the investment policies of the fund and the engagement and activities of its former investment consultant. These findings were supported by the testimony of E. M. Sanders, secretary-treasurer of the Pension Plan Committee; Herbert D. Elovitz, comptroller of the International Union; Mr. Vilberg; Delmayne Aleman, a former member of the Pension Plan Committee; C. O. Huff, a former member of the Union's Executive Board; Kenneth Peek, vice president and trust officer of The Indiana National Bank; Julius Harlan, secretary-treasurer of the Union's Local 715, and by various exhibits introduced by plaintiff.[30] During the course of

29. It is immaterial that the International Union itself was not placed under a permanent receivership on June 22, for plaintiff had already produced evidence that the pension fund was actuarially unsound and had its assets severely depleted through mismanagement of the Pension Plan Committee. Accordingly, disparate treatment of the pension fund was justified, so that it was entirely proper for the district judge to set an August 3, 1971,

hearing on why the Union's temporary receivership should not be made permanent.

30. Although defendants' brief contains one sentence critical of the findings and conclusions pertaining to the surety bonds, as shown elsewhere in this opinion, at the time of the June 22nd hearing with respect to the appointment of a permanent receiver, the New Hampshire Insurance Company's Indiana resident agent testi-

proceedings, triers of fact often change their assessment of the evidence. Therefore, despite previously expressed doubts, the district judge was entitled to conclude when appointing the permanent receiver that plaintiff had sufficiently proved his case.

Defendants also seek reversal of the supplemental order of July 9, 1971, directing publication of further notice to the class in the Union's "Journeymen Barber," on the ground that the "impermissible findings and conclusions [in the June 29th permanent receivership order] are repeated in the July 9th supplemental order." Since we have already held that those findings and conclusions were permissible, this attack on the July 9th order must be rejected.

In closing, we express confidence that the experienced district judge will afford defendants an opportunity to alter the status of the permanent receiver when an appropriate surety bond is tendered and when the pension fund's house has been put in order.

Costs will be taxed against defendants.

The district court's June 29 and July 9, 1971, orders are affirmed.

fied that his signature had been forged to the pension fund surety bond, and defend- ants' counsel finally admitted that the bond was to expire six days thereafter.