UNITED STATES of America

v.

Jose Antonio FERNANDEZ, et al.

Crim. A. No. B–83–18–CR (5).

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 8, 1983.

---

Wesley Rivers, Asst. U.S. Atty., E.D. Tex., Beaumont, Tex., Paul Coselli, Houston, Tex., for the U.S.

Kent A. Schaffer, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. PARKER, District Judge.

David Brydie Mitchell was indicted and convicted of twelve counts of an indictment which involved numerous offenses concerning alleged marihuana activities occurring from 1978 until 1980.[1] COMES NOW to be considered Defendant, Mitchell's, Motion for a New Trial filed by Attorney Kent Schaffer and Defendant, Mitchell's, Motion for Retrial filed by Defendant Mitchell. Because of those motions, this Court now considers whether prior denials of Mitchell's motion for continuance and motion for severance were proper.

## I.  FACTUAL BACKGROUND [2]

On July 12, 1983, the instant case was set for trial before this Court beginning September 7, 1983. On July 26 and July 28, the Defendant appeared before the Honorable Magistrate Harry W. McKee, but had not retained an attorney, so the arraignment was reset on both days. On July 29, 1983, Defendant, Mitchell appeared again before Magistrate McKee. At that time, Kent Schaffer advised the Court that he still had not been retained, but expected to come to an agreement by that weekend. Arraignment was again reset. On August 1, 1983, Schaffer appeared as Mitchell's attorney and Mitchell was arraigned. The trial setting was specifically given to attorney Schaffer and he made no mention of a scheduling conflict or even the possibility of conflict.

On August 15, Schaffer filed a motion for severance and for continuance asking that the trial be postponed from its September 7, 1983 setting because he was set for trial in San Antonio before the Honorable William M. Sessions beginning September 6, 1983 in the case of *United States v. Dempsey Merida,* et al, SA–83–CR–53, which was to last 6–8 weeks. The trial setting in that case was given to Schaffer on June 13, 1983. Further, Schaffer stated he was scheduled for a 4–6 week trial in state court which was to begin the end of October.

This Court denied the motions for severance and continuance and on September 7, 1983, the Defendant Mitchell began trial without the presence of an attorney.

On September 24, the jury returned a guilty verdict against Mitchell on all twelve counts. Mitchell was found guilty of one count RICO substantive, 18 U.S.C. § 1962(c) and § 1963(a)(1); one count RICO conspiracy, 18 U.S.C. § 1962(d) and

---

**1.** The indictment consisted of a total of 20 counts against some 45 defendants. Those counts included offenses of RICO substantive, 18 U.S.C. § 1962(c) and § 1963(a)(1); RICO conspiracy, 18 U.S.C. § 1962(d) and § 1963(a)(1); distribution and possession of marihuana, 21 U.S.C. § 841(a)(1) & (b)(6) and 18 U.S.C. § 2; importation of marihuana 21 U.S.C. § 952 & 960(a)(1) and 18 U.S.C. § 2;

conspiracy to distribute, 21 U.S.C. § 846; conspiracy to import, 21 U.S.C. § 963; Travel Act, 18 U.S.C. § 1952(a)(3) & § 2; and Continuing Criminal Enterprise, 21 U.S.C. § 848.

**2.** Only those facts that are relevant to the issues presented in this opinion are discussed.

§ 1963(a)(1); three counts of distribution and possession with intent to distribute, 21 U.S.C. § 841(a)(1); three counts importation; 21 U.S.C. § 952 & 960(a)(1) and 18 U.S.C. § 2; one count conspiracy to distribute and possess with intent to distribute, 21 U.S.C. § 846; one count conspiracy to import, 21 U.S.C. § 963; one count crossing State lines for unlawful activity, 18 U.S.C. § 1952(a)(3) & § 2; and one count Continuing Criminal Enterprise, 21 U.S.C. § 848.

On November 21, 1983, this Court sentenced defendant Mitchell and dismissed the Continuing Criminal Enterprise Count for lack of evidence on the supervisory element of the offense.

Because of the motion for new trial and motion for retrial, this Court must now decide whether to grant a new trial because of the Court's earlier orders denying continuance and severance. After carefully considering the facts surrounding this case, the Court has concluded that the motions for continuance and severance were properly denied.

## II.  THE MOTION FOR SEVERANCE

Severance under 8(a)[3] and 8(b)[4] is not a matter of discretion but a matter of right when there has been misjoinder. *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir.1975), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Under 8(b) joinder is proper if defendants are alleged to have participated in the "same series of acts or transactions constituting the offense or offenses." Under 8(a) joinder is proper if the offenses are based on the same transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Defendant Mitchell complains of misjoinder in his motion for new trial and states that there are 8 counts of the indictment which he is not indicted on and which are separate and independent transactions. Mitchell's contentions are meritless.

■ It is well settled that joinder under Rule 8 is proper where an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy. *United States v. Phillips*, 664 F.2d 971, 1016 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Weinrich*, 586 F.2d 481, 495 (5th Cir.1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).

In this case, the RICO conspiracy count was the common thread or link joining the parties and the counts in the single indictment. The allegation in the RICO conspiracy count was that the defendant agreed to further a racketeering enterprise through racketeering activity. The diverse parties, including Mitchell, were tied together through the overall scheme and the concept of the illegal enterprise. Under the statute, it is irrelevant that each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs. *United States v. Elliott*, 571 F.2d 880, 886 (5th Cir.1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Both the overt acts and the substantive predicate crimes al-

**3.** The Federal Rules of Criminal Procedure, Rule 8(a) states in pertinent part:

"Two or more offenses may be charged in the same indictment ... if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

**4.** The Federal Rules of Criminal Procedure, Rule 8(b) states in pertinent part:

"Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all the defendants need not be charged in each count."

leged in the indictment were sufficiently connected that their interrelationship constituted the same series of acts or transactions. *United States v. Phillips*, 664 F.2d at 1016.

■ Furthermore, it is not crucial to the existence of a conspiracy that each conspirator participate in every phase of the criminal venture. *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). Nor, is it necessary for each conspirator to have knowledge of the identity and role of each of his co-conspirators. *Id.* The unity essential to a conspiracy is derived from the assent of the members to contribute to a common enterprise. Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership. *United States v. Perez*, 489 F.2d 51 (5th Cir.1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

■ Because the allegations of the indictment taken as true establish an enterprise conspiracy, there was no inherent prejudice to the defendants and joinder was proper under Rule 8. Since joinder was proper, severance now becomes a matter of this Court's discretion under Rule 14. *United States v. Grassi*, 616 F.2d 1295, 1302 (5th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).

■ In ruling on the Rule 14 motion for severance, this Court balanced the right of the defendant to a fair trial, keeping in mind the possibility of prejudice in a joint trial, against the public's interest in efficient and economic administration of justice, and severed the defendants as the needs of justice dictated. *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir.1976),

*cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

■ At the time this Court ruled on the motion for severance, and now, in reviewing its order denying severance, this Court refuses to hold that the evidence presented in this case was such that "a jury could not reasonably be expected to separate the indictment or the defendants and to evaluate the evidence properly and individually against each . . . ." *United States v. Harris*, 458 F.2d 670, 673 (5th Cir.1972), *cert. denied*, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972). In reaching this conclusion, the Court does not rely so much on the weight of prior decisions,[5] but rather its understanding of the evidence and the efforts which this Court took "to individualize each defendant in his relation to the masses." *Kotteakos v. United States*, 328 U.S. 750, 773, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946); *United States v. Elliott*, 571 F.2d at 903 (5th Cir.1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Furthermore, this Court was cognizant of its continuing duty at all stages of the trial to grant a severance if prejudice does appear. *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960); *United States v. Johnson*, 478 F.2d 1129, 1132 (5th Cir.1973). In fact, this Court granted a severance to Defendant Castro when it appeared that Castro was misjoined or at the least would suffer spillover prejudice from the rest of the defendants. Castro was allegedly involved in the end of the conspiracy alleged or perhaps the beginning of a new conspiracy.

Additionally, this Court adequately prevented the likelihood of any spillover effect by specifically instructing the jury to consider each offense separately and each defendant individually.

---

**5.** See, *United States v. Bedgood*, 453 F.2d 988 (5th Cir.1972) (no abuse in denying severance when evidence admitted against one defendant would not have been admissible against other defendant). *United States v. Dioguardi*, 332 F.Supp. 7 (S.D.N.Y.1971) (contention that trial would be lengthy and hence costly to defendant

was not in itself sufficient basis for severance). *United States v. Brady*, 579 F.2d 1121 (9th Cir. 1978) *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979) (severance for disproportionate proof). *See generally*, 1 Wright, *Federal Practice and Procedure* § 233 (1969).

This Court desiring also to prevent spill-over from the numerous exhibits, instructed the Government to prepare an exhibit chart, for the jurors' notebooks, which correlated every exhibit to each individual defendant the exhibits were offered against. The Court was also willing to allow defendants to include their exhibit numbers in the same notebook. All defendants objected, so the Court allowed the entire exhibit chart to be removed from the notebooks. Finally, this Court now reviews the jury's verdict and concludes that the verdict reflects the fact that the jury carefully considered the evidence supporting each charge against each individual defendant.[6] The jury found four defendants not guilty with respect to all charges against them and found the other five defendants guilty of all charges alleged against them in the indictment.

After reviewing all of the circumstances, this Court does not believe that the reasons advanced by the defendant and his counsel outweigh the public policy in favor of a joint trial. Duplication of effort was avoided by the trial since the same evidence pertinent to the substantive counts of the indictment was also used in the government's attempt to prove the conspiracy counts. Any possible prejudice to the defendants was avoided through proper jury instruction as can be evidenced by the jury's verdict. For all of the above reasons, the Court's earlier denial of Mitchell's Motion for Severance was proper and the Court denies a new trial on those grounds.

## III. THE MOTION FOR CONTINUANCE

Both the motion filed by Schaffer for New Trial on behalf of defendant Mitchell and defendant's Mitchell's Motion for Retrial assert that this Court erred in forcing David Brydie Mitchell to trial in this cause at a time when his attorney was in trial before another federal judge.

This Court now reviews whether denying Mitchell's motion for continuance was so arbitrary and so fundamentally unfair as to do violence to the Constitutional principle of due process and effective assistance of counsel.

The sixth amendment guarantees to criminal defendants the right to assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In 1954, the Supreme Court stated that "A necessary corollary [to the right of assistance of counsel] is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth." *Chandler v. Fretag,* 348 U.S. 3, 9–10, 75 S.Ct. 1, 4, 99 L.Ed. 4 (1954). *See also, Crooker v. California,* 357 U.S. 433, 439, 78 S.Ct. 1287, 1291, 2 L.Ed.2d 1448 (1958); *White v. Ragen,* 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348 (1945).

■ Furthermore, due process demands that the defendant be afforded a fair opportunity to obtain the assistance of counsel of his choice to prepare and conduct his defense. The constitutional mandate is satisfied so long as the accused is afforded a *fair or reasonable* opportunity to obtain particular counsel and so long as there is no arbitrary action prohibiting the effective use of such counsel. *Gandy v. State of Alabama,* 569 F.2d 1318 (5th Cir.1978); *United States v. Burton,* 584 F.2d 485 (D.C.Cir.1978); *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3rd Cir. 1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). *See also, United States v. Inman,* 483 F.2d 738, 739–40 (4th Cir.1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974); *United States v. Jones,* 369 F.2d 217, 219 (7th Cir.1966), *cert. denied,* 386 U.S. 944, 87 S.Ct. 976, 17 L.Ed.2d 875 (1967).

---

**6.** The Court's review for a new trial focused on the verdict because "convictions will invariably be sustained if it may be inferred from the verdict that the jury meticulously sifted the evidence. *Tillman v. United States,* 406 F.2d 930,

936 (5th Cir.) (quoting 8 J. Moore, *Moore's Federal Practice* § 14.04[1], at 14–15 (2d ed. 1968), *vacated in part on other grounds* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). ·

■ While what is a "fair and reasonable opportunity" depends upon all the surrounding circumstances, some factors to be considered include: 1) the length of the requested delay; 2) whether the lead counsel has an associate who is adequately prepared to try the case; 3) whether other continuances have been requested and granted; 4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the Court; 5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; and 6) whether there are other unique factors present. *Gandy v. State of Alabama,* 569 F.2d at 1324. *See also, United States ex rel. Spurlark v. Wolff,* 683 F.2d 216 (7th Cir.1982); *Linton v. Perini,* 656 F.2d 207 (6th Cir.1981); and *United States v. Burton,* 584 F.2d at 490–491.

■ In reviewing those factors, the Court finds that: 1) the length of the delay would have been several months considering the projected length of the San Antonio trial and the State trial; 2) Schaffer has no associates, but rather shares office space with his brother's firm, Schaffer, Lambright and Odom, but Don Lambright of that firm represented Charles Scott Chiles and Jerry Fishel, defendants in this case; 3) no other continuances were granted; 4) the Court set, in advance, the month of September for the trial, so that all attorneys, witnesses, and the Court could arrange to be present; 5) the defendant had knowledge of his attorney's conflict near the time of arraignment; 6) the defendant and his attorney requested in bad faith, for purposes of delay, the continuance; 7) the defendant had one month opportunity to retain other counsel; 8) the defendant attempted to manipulate the Court's scheduling by retaining an attorney whom he knew had a conflict.

In general, those factors require the proper exercise of this Court's discretion in the delicate balancing of the defendant's due process right to adequate representation by counsel of his own choice and the general interest in the prompt and efficient administration of justice.[7]

The Court recognizes that the Supreme Court has made clear the fact that not every denial of a request for continuance is a denial of due process. In *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the Court stated:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right

---

7. *Gandy v. State of Alabama,* 569 F.2d at 1323, fn. 9, described the balance as follows: "Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice." The calendar control of the criminal and civil dockets—especially in rural areas is an operation constantly buffeted by conflicting forces. "The accused's rights—such as those relating to a speedy trial, to an adequate opportunity to prepare the defense, and to confront witnesses—are constantly in potential or real conflict with the prosecution's legitimate demands for some stability in the scheduling of cases. The availability of prosecution witnesses is often critically dependent on the predictability of the trial list." Delays and postponements only increase the reluctance of witnesses to appear in court.

"Moreover, it is not only the prosecution which may suffer from unscheduled changes in the calendar. To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. Played to an extreme conclusion, this game of judicial musical chairs could collapse any semblance of sound administration, and work to the ultimate prejudice of many defendants awaiting trial in criminal courts."

"This is not to say that there should be an arbitrary and inelastic calendaring of cases without due regard, for example, to the existence of conflicting demands for the service of a particular counsel by different courts. In judicial administration, too, there should be no absolutes. It is the trial judge who must balance the conflicting demands of court administration with the rights of the accused ... he must consider not only those involved in the case immediately before him but also those of other defendants awaiting trial whose rights may be affected by the consequences of trial delay."

to defend with counsel an empty formali-ty. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Id.* at 589, 84 S.Ct. at 849–50.

In evaluating the identified factors and reconciliation of the competing values, this Court was guided by prior controlling precedent. The case this Court examined was *United States v. Barrentine*, 591 F.2d 1069 (5th Cir.1979), *rehearing denied*, 599 F.2d 1054 (5th Cir.1979), *cert. denied*, 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979) where the trial court's refusal to grant a continuance so that retained counsel of defendant's choice could be present at trial was upheld. In that case, 19 days prior to scheduled trial date, defendants were aware that such setting conflicted with counsel's schedule, defendants were present some 11 days before trial date when the court stated that the trial would go forward and other qualified attorneys were available to assume the defense, and the case involved 18 defendants and 47 witnesses.

As in the *Barrentine* case, the defendant here relies on *Gandy*, to support his motion for continuance, where the Court of Appeals granted a new trial, but there are distinguishing factors. The Court in *Gandy* stated:

This is not a case in which the defendant was afforded an ample opportunity to secure counsel of his choice and attempted to manipulate the court's schedule by ... selection of an unavailable attorney. *Gandy v. Alabama*, 569 F.2d at 1328.

In this case, there is no explanation why on August 1, counsel could not have excused himself and advised the defendant to hire other counsel, rather it is apparent that counsel attempted to manipulate the court by delaying his motion for continuance and delaying his announcement of scheduling difficulties.

The case at bar and *Barrentine* are similar in other aspects; both were faced with case management difficulties. The Court in *Barrentine* stated that "the trial court was faced with the extremely difficult task of managing a case with 18 defendants and half-a-hundred witnesses." This Court also confronted similar numbers. At the time this Court refused to grant Mitchell's continuance, there were 16 defendants, over 50 document witnesses, 1 witness in the government protection program, and 20 other government witnesses, not to mention the defense witnesses. Schaffer could not have expected this Court to follow his schedule at the expense of the orderly disposition of business on the Court's docket, especially considering the motives of his request.

As of the first day defendant hired attorney Schaffer, Schaffer unequivocally knew of his conflict in the trial setting. He was informed of his trial setting in the San Antonio case in the middle of June and the September trial was scheduled in the middle of July. Schaffer accepted employment from Mitchell between July 29 and August 1. Prior to August 1, Mitchell was present in the courtroom on three separate occasions when other defendants were arraigned and given their trial setting. Attorney Schaffer himself was present in the courtroom on July 29 when another defendant in this cause was arraigned. Furthermore, Schaffer shares office space with the firm where Don Lambright is a partner. Lambright represented two defendants in this case, Scott Chiles and Jerry Fishel who were arraigned and given their trial setting on July 19 and July 25, respectively. Finally, on August 1, the date this Court specifically instructed Schaffer about the trial setting, he did not mention a possibility of a conflict and the defendant did not mention a conflict. Overall, there can be no doubt that Mitchell and Schaffer were aware of the trial setting conflicts and deliberately attempted to delay the trial. And if the facts leading to his employment are not persuasive to prove delay, then his delay of two weeks in filing his motion for continuance should show the unwilling be-

liever that Schaffer filed his motion in bad faith. Schaffer and the defendant made a calculated attempt to force a continuance on this Court. They gambled and lost.

This Court denied the motion for continuance not only because of case management difficulties and the deliberate attempt to delay the proceedings, but also because 7 of the 15 other defendants had not waived their right to speedy trial and the majority of those defendants had to be tried in September to comply with the terms of the statute, 18 U.S.C. § 3161. Honoring Schaffer's other commitments would require putting the trial off until the first of next year. Other defendant's rights cannot be prejudiced for one attorney's convenience, particularly when that attorney has a conflict of his own making.

In conclusion, this Court recognized that a key consideration in the right to counsel under the sixth amendment is a reasonable opportunity to employ and consult with counsel; every person has a constitutional right to retain at his own expense his own counsel so long as that right does not unreasonably interfere with the normal progress of a criminal case. The sixth amendment does not give the accused the power to manipulate his choice of counsel to delay the orderly progress of his case. The defendant, Mitchell, cannot assume that the right to choose counsel affords him "the right to obtain a delay at his whim and caprice or to obtain a reversal (new trial) because he was as unable to frustrate justice." *United States v. Grow*, 394 F.2d 182, 210 (4th Cir.), *cert. denied*, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968).

It is, therefore, ORDERED, ADJUDGED AND DECREED that the defendant, Mitchell, be denied a New Trial and a Retrial.