**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Joseph GOWER, Defendant-
Appellant.**

**No. 30367.**

United States Court of Appeals,
Fifth Circuit.

June 1, 1971.

Certiorari Denied Oct. 12, 1971.

See 92 S.Ct. 84.

Jay Freedman, Chicago, Ill., Francisco J. Flores, Laredo, Tex., Francis R. Salazar, Denver, Colo., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, Circuit Judge, DAVIS,* Judge, and GOLDBERG, Circuit Judge.

WISDOM, Circuit Judge.

Charles Joseph Gower was charged in a three-count indictment with (1) conspiring to smuggle marihuana into the United States contrary to law, (2) smuggling marihuana, and (3) transporting marihuana after its importation knowing that it was smuggled into the United States contrary to law, all in violation of 21 U.S.C. § 176a. A jury returned verdicts of guilty on each count. The district court sentenced Gower to serve three concurrent terms of five years each in the custody of the Attorney General.

On appeal Gower presents seven contentions. We shall deal with each individually and relate such facts as may be necessary to the disposition of each contention.

I.

Gower first contends that the procedure used by the United States Attorney's office in obtaining the return of an indictment against him was merely a "rubber stamping" of a proposed indictment, which deprived him of his Fifth Amendment right to an indictment by an independently acting grand jury. This contention actually has two parts. First, Gower complains that the grand jury did not spend enough time considering his case. Second, he complains that when the grand jury did return an indictment against him, it was in the identical form and language as the proposed indictment drafted by the United States Attorney's office. We find no merit in either of those contentions.

■ The first contention—that the grand jury did not spend enough time considering Gower's case—is actually directed toward the first indictment returned against him.[1] He was not tried on that indictment, however, but on a second and superseding indictment.[2] As to the second indictment, charging the offenses of which Gower was eventually found guilty, there is evidence in the record that the grand jury spent forty-five minutes considering Gower's case. We know of no case or statute prescribing the length of time a grand jury must spend in deliberations. And we have no intention of setting out such a rule in this case. We hold only that from the evidence presented it does not appear that the grand jury in this case

---

1. The first indictment charged that Gower had (1) smuggled marihuana into the United States contrary to law, (2) transported marihuana after its importation knowing the same to have been illegally imported, and (3) transported and concealed marihuana without having paid the transfer tax imposed by 26 U.S.C. § 4744(a) (2).

2. Following Gower's conviction for the offenses charged in the second indictment, the district court granted the Government's motion to dismiss the first indictment.

failed to discharge its duty to determine whether there were reasonable grounds to believe that a crime had been committed and that Gower had committed it.

■ We find no reversible error in the mere fact that the indictment returned against Gower was in the identical form as the proposed indictment drafted by the United States Attorney's office. We know of no rule that the grand jury must draft its indictments unaided by the prosecuting attorney. Moreover, the similarity between the indictment actually returned and the proposed indictment drafted by the prosecutor does not necessarily mean that the grand jury did not consider carefully the evidence against Gower. And, as we have indicated, there is ample evidence in the record indicating that the grand jury did in fact faithfully discharge its duty in this case.

## II.

Second, Gower contends that the district court committed reversible error in refusing to grant his motion for a continuance. The granting of a continuance is of course a matter within the sound discretion of the trial court, and we do not reverse its judgment except upon a showing of abuse of that discretion. United States v. Fuentes, 5 Cir. 1970, 432 F.2d 405, 407; McKissick v. United States, 5 Cir. 1967, 379 F.2d 754, 757.

■ We find no abuse of discretion in this case. About three months prior to trial Gower's counsel received notice of the proposed indictment that the United States Attorney's office intended to present to the grand jury. In only one respect were these charges different from the ones on which Gower ultimately went to trial. In the intervening

three months Gower was continuously represented by counsel, who filed numerous pre-trial motions on his behalf. About one month before trial Gower's chief counsel, an attorney from Colorado, was disqualified from appearing as trial counsel because of an indictment pending against him in Colorado. Three days before trial the district court permitted Gower's local counsel to withdraw because of a possible conflict of interest.[3] At that time the court denied Gower's motion for a continuance. The court insisted that Gower obtain trial counsel within three days, but permitted the disqualified chief counsel to assist the trial counsel in the trial of the case. When the trial commenced three days later, Gower had obtained trial counsel, who conducted an able and vigorous defense, including a searching cross-examination of the Government's major witness. In these circumstances we cannot say that the district court abused its discretion by denying the motion for a continuance.

## III.

Third, Gower contends that the district court erred in "summarily" denying his various pre-trial motions.[4] This contention also has two aspects. First, Gower complains that the court denied him due process when it did not afford his attorneys an opportunity to argue the motions orally. Second, he contends that on the merits the court erred in denying his motions.

■ As to the first contention, we hold that it was well within the discretion of the district court to decide the motions on the basis of a written memorandum alone.

■ ■ On the merits we hold that the court did not err in denying the mo-

---

3. Gower's local counsel also represented Stephen Thomas Miles, Gower's alleged co-conspirator, who had entered a plea of guilty to the offenses charged and who had agreed to testify for the Government at Gower's trial.

4. These motions included a motion for discovery and inspection of evidence, motion to transfer the case, motion to dismiss the indictment, motion to inspect the grand jury minutes, motion to require sentencing to Gower's co-conspirator, motion for a bill of particulars, and supplemental motion to dismiss the indictment.

tions. Most of the motions related to the proceedings before the grand jury, in particular the evidence presented to the grand jury. Such motions are addressed to the sound discretion of the trial court and are not subject to review in the absence of an abuse of discretion. *E. g.*, Franano v. United States, 8 Cir. 1960, 277 F.2d 511, 513; Carrado v. United States, 1954, 93 U.S.App.D.C. 183, 210 F.2d 712, 717. In the circumstances of this case the court committed no such abuse of discretion. The Supreme Court's decision in Costello v. United States, 1956, 350 U.S. 359, 76 S. Ct. 406, 100 L.Ed. 397, has made it clear that a defendant is not entitled to litigate the sufficiency of the evidence presented to the grand jury. United States v. Ramsey, 2 Cir. 1963, 315 F.2d 199; United States v. Barnes, 6 Cir. 1963, 313 F.2d 325, 326; Franano v. United States, supra; United States v. Labate, 3 Cir. 1959, 270 F.2d 122, 123–124.

#### IV.

Fourth, Gower contends that the court erred in denying his motion for a mistrial made when it was discovered that Mrs. Ed Mann, the mother of the United States Commissioner in Laredo, was a member of the jury.

■■ Gower does not—and indeed cannot—contend that Mrs. Mann was automatically disqualified from jury service; rather he contends that had he known of her relationship to the Commissioner he would have exercised one of his peremptory challenges to strike her name from the jury list. On voir dire, however, the only question asked that might have elicited that information was whether any member of the jury panel was related to anyone who had been employed in a law enforcement capacity; Mrs. Mann did not respond. The court denied the motion for a mistrial on two grounds: (1) that the Commissioner was not a law enforcement officer and therefore Mrs. Mann need not have responded to the question, and (2) that Gower's local counsel knew both the

Commissioner and Mrs. Mann and made no motion to strike her at the time the jury list was being prepared. The district court has of course wide discretion in determining the qualification of jurors. In these circumstances we cannot say that the court abused its discretion by allowing Mrs. Mann to remain on the jury.

#### V.

Gower next contends that the conduct of the trial judge prejudiced him in the eyes of the jury. Specifically, he complains that the judge occasionally called the Government's chief witness "son," and that he actively interrogated that witness. Gower also complains that the judge extensively cross-examined him and that he did so in a tone of voice such as to indicate his disbelief of Gower's testimony.

■ We are unable to see how the trial judge's occasional references to the Government's chief witness as "son" could have possibly prejudiced Gower. The remark is obviously nothing more than a harmless mannerism of an older man in addressing all young men. Indeed, the judge on occasion also addressed Gower as "son."

■■ ■ Gower's charge that the judge by his extensive questioning usurped the function of the prosecuting attorney is a more serious contention. It is of course basic to due process that the trial judge conduct a fair and impartial trial. To that end he must avoid appearing to be partial to the prosecution. We think that here the trial judge properly played his role as an impartial umpire. This role is not inconsistent with his duty to see that the evidence is clearly presented and there there is no misunderstanding of the testimony of the witnesses. *See, e. g.*, O'Brien v. United States, 5 Cir. 1969, 411 F.2d 522, 523; United States v. De Siseo, 2 Cir. 1961, 289 F.2d 833, 834.

In the circumstances of this case the trial judge did not err in questioning both Gower and the Government's chief

witness Miles, Gower's alleged co-conspirator. The evidence in the case consisted largely of the testimony of Miles and that of the defendant himself. Each had a different version of the facts leading to their arrest at the Mexican border. In each instance when the trial judge broke in to question the witness, the testimony of the witness on an important part of his story had become vague and somewhat self-contradictory. In thus attempting to clarify the testimony for the benefit of the jury, the trial judge did not commit reversible error.

## VI.

Gower's sixth contention is that on each count of the indictment the Government's evidence was insufficient to support his conviction. As with several of Gower's other contentions, this argument has several aspects.

First, Gower complains that the only evidence pertaining to the alleged conspiracy consisted of the testimony of Miles, his alleged co-conspirator, and that of certain Government agents, who merely reported what Miles had said to them. Gower argues that none of this evidence was admissible. See Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. Without it, he contends, there remains no evidence upon which he could be convicted of the offenses charged.

■ The testimony of Miles and the Government agents was admissible. There can be no objection to the testimony of Miles himself; his testimony constituted direct evidence of the alleged offenses. Moreover there was no error in the admission of Miles's out-of-court statements made to the Government agents. Because Miles testified at the trial and was thus available for cross-examination, the confrontation problems generally involved in the admission of out-of-court statements of co-conspirators were not present in this case. See California v. Green, 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489; cf. United States v. Sims, 6 Cir. 1970, 430 F.2d 1089.

■ Second, Gower contends that the undisputed evidence showed that it was Miles alone who attempted to smuggle the marihuana past the customs agents and that Gower had nothing to do with the smuggling. We cannot agree with this contention. Miles's testimony alone, if believed by the jury, was more than sufficient to support the conclusion not only that Gower conspired to smuggle marihuana into the country contrary to law but also that he actively participated in the smuggling operation even if he was not the person who actually transported the marihuana across the border.

## VII.

Gower's final contention is that there was such a variance between the Government's evidence at trial and the indictment upon which the case was tried that Gower was deprived of his rights to know the nature of the charges against him and to be tried only on charges presented in an indictment returned by a grand jury. See Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252.

The crux of this contention is that the indictment upon which he was tried charged Gower with smuggling and transporting marihuana contrary to law. The evidence developed at the trial showed that it was Miles, the alleged co-conspirator, who actually transported the marihuana across the border. In its instructions to the jury the court stated that the theory of the Government's case was that Gower aided and abetted the smuggling operation. On that theory apparently the jury returned verdicts of guilty. Gower now argues that the indictment upon which he was tried nowhere advised him that he would be tried as an "aider and abetter." Because of this "variance" between the offense for which he was indicted and the offense of which he was convicted, he was deprived of his rights to know the

nature of the charges against him and to be tried only on charges presented in an indictment returned by a grand jury.

 The rule is well established, however, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense. *See, e. g.,* United States v. Leeper, 8 Cir. 1969, 413 F.2d 123, 127; Theriault v. United States, 8 Cir. 1968, 401 F.2d 79, 85; United States v. Ramsey, 2 Cir. 1967, 374 F.2d 192, 196; Yeloushan v. United States, 5 Cir. 1964, 339 F.2d 533, 534–535.

Therefore, the judgment of the district court is affirmed.