**UNITED STATES of America,**

**v.**

**Hilda F. NIEDELMAN, Defendant.**

**No. 72 Cr. 1127.**

United States District Court,
S. D. New York,
Criminal Division.

April 6, 1973.

Whitney North Seymour, Jr., U. S. Atty., New York City, for plaintiff; John J. Tigue, Jr., Asst. U. S. Atty., of counsel.

Richard Kuh, Kuh, Goldman, Cooperman & Levitt, New York City, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendant Hilda Niedelman moves to dismiss an indictment charging her with one count of conspiracy, twenty-three "Travel Act" counts, and twenty-three mail fraud counts. She contends that:

1. The Travel Act, 18 U.S.C. § 1952, does not cover the alleged offenses commercial bribery.

2. The mail fraud counts are defective in that they fail to identify a victim of the alleged scheme to defraud.

3. The grand jury did not act as a body independent of the United States Attorney in that it did not scrutinize the actual terms of the indictment.

4. There is a possibility that defendant Niedelman's testimony before the grand jury was not heard by every juror that voted to indict her.

5. The prosecutor abused his discretion by seeking to indict defendant Niedelman at all, by treating her so severely in comparison both to her co-defendants and to those charged in companion indictments, and by failing to seek an indictment against either Aviquipo, the corporation of which defendant was Treasurer, or Lockheed, which later acquired it.

■ I am persuaded that § 1952 was not intended to cover commercial bribery, but reject defendant's other arguments.

### I.

Section 1952 provides:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity;

or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1),

(2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means

(1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or controlled substances (as defined in Section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of

the State in which they are committed or of the United States, or

(2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

The instant prosecution is based on a combination of (a)(1) and (3) and (b)(2), the government's theory being that defendant Niedelman used the mails with intent to carry on "bribery" in violation of New York Penal Law § 180.00, McKinney's Consol.Laws, c. 40. That statute, entitled Commercial Bribing, provides:

"A person is guilty of commercial bribing when he confers, or offers or agrees to confer any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs. Commercial bribing is a class B misdemeanor."

The offense charged in the indictment is that defendant Niedelman participated in a scheme whereby payments were mailed from Aviquipo, Inc. to the purchasing agent for Fiat, for the purpose of inducing such agent to place purchase orders for Fiat with Aviquipo.

Defendant contends that the alleged offense is not punishable by § 1952 because the Congress did not intend to cover the offense known in New York as "commercial" bribery when it used the generic term "bribery."

Similar contentions have heretofore been raised and rejected in this District. See United States v. Maiolo (72 Cr. 1123), United States v. Endresen (73 Cr. 85), United States v. Hohn (72 Cr. 1124), and United States v. Callahan (72 Cr. 1126). I feel constrained to disagree with these determinations.

The Supreme Court's decision in United States v. Nardello (1969) 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 is here controlling. In that case, an indictment under the Travel Act charged the defendants with "shakedown" operations (luring victims into sexual situations of a compromising nature and then extorting money on threat of exposure) committed in Pennsylvania with the aid of instrumentalities of interstate commerce. The District Court dismissed the indictment on the ground that Pennsylvania statutes defined the defendants' unlawful conduct as "blackmail" rather than "extortion" and that the offense was therefore not picked up by the Travel Act. The Supreme Court reversed, ruling that the Travel Act, in providing for Federal punishment of such "extortion" as was prohibited by State law, was intended to reach conduct deemed by the Congress to be extortionate, regardless of the nomenclature employed by State legislatures in punishing the conduct in question. Turning, therefore, to the case at bar, the question is whether or not the Congress had in mind unauthorized payments to purchasing agents when it used the generic term "bribery" in the Travel Act.

As I read the *Nardello* decision, the court laid down some rather clear guidelines for resolving such a question. Interpretation of the Travel Act, *Nardello* declared, should have the effect of carrying forward two basic Congressional objectives: (1) to assist the states in fighting the depredations of the organized underworld (393 U.S. at 290–292, 89 S.Ct. 534); and (2) insofar as possible, to achieve an interpretation having a uniform effect throughout the nation (at 293–294, 89 S.Ct. 534). The interpretation urged by the government in the case at bar would further neither of these objectives, and would utterly thwart the second.

As to the first objective, the extensive Congressional hearings cited by the Court in *Nardello* and by respective counsel in the case at bar contain not so much as a hint that so-called "commercial" bribery (as opposed to conventional bribery, arson and extortion) was ever considered to be a typical tool of the underworld. On the contrary, as the case at bar—like the companion cases of *Maiolo, Endresen, Hohn* and *Callahan*—illustrates, commercial bribery is typi-

cally an establishment transgression. Furthermore (as the next paragraph establishes), at the time the Travel Act was under consideration, no legislature had ever treated "commercial" bribery as severely as the various crimes ultimately specified in that statute.[1]

As to the second objective, achieving national uniformity, we find that, in 1960—the year before the Travel Act was enacted—one half the states imposed no criminal sanctions upon commercial bribery, twelve had limited statutes, and only thirteen had general states punishing such an offense. Among the states which punished the particular conduct here involved (payments to a purchasing agent) potential prison terms varied from 6 months (Nebraska, Washington), to a year (Connecticut, Louisiana, Massachusetts, Michigan, New York, Pennsylvania, Rhode Island, South Carolina, Virginia, Wisconsin). See Note, 108 U.Pa.L.Rev. 848 (1960), Chart pp. 864, 866. Since the Travel Act was enacted, New York has reduced the possibility of imprisonment to a maximum of three months [N.Y.Penal Law §§ 180.00, 70.15(2)]. In other words, the interpretation of the Travel Act which the government here urges would in some states have the drastic effect of converting a minor state offense into a major federal felony, while in other states it would have no effect whatever. In neither event would it assist the states by making available federal punishment comparable to that which they, in their legislative judgment, had already fixed for the offense involved. I need not—and for present purposes do not—question the Congress' power to create such a situation. However, I find absolutely no evidence that the Congress harbored any such intent. *Cf.* United States v. Bass (1972) 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488, United States v. Enmons (1973) 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379.

Counts 26 through 48 are accordingly dismissed. Since Count 1 charges only a conspiracy to violate the Travel Act, it too is dismissed.

## II.

■ Defendant's second objection to the indictment is that the mail fraud counts fail to allege the necessary elements of that offense and, in addition, that eight of those counts charge mailings predating the existence of the alleged scheme to defraud.

The mail fraud counts track the language of 18 U.S.C. § 1341, and then in their second paragraph state that in furtherance of the alleged fraudulent scheme defendant Niedelman and others caused payments to be made indirectly by Aviquipo, Inc. to Curtis Baldwin, a Fiat purchasing agent, to induce Baldwin to cause Fiat to make purchases from Aviquipo.

Although, as defendant observes, the indictment does not explicitly name the victim of the fraud or describe the injury claimed to have resulted, I find that the allegation that the payments were made to induce an employee of Fiat to take action favorable to Aviquipo (the payor) adequately identifies Fiat as victim of the fraud and adequately defines the resulting injury as the subversion of Fiat's employee. This is sufficient to enable defendant to prepare her defense and protect her from the possibility of double jeopardy. *Cf.* United States v. De Sapio (S.D.N.Y.1969) 299 F.Supp. 436, 445–446.

■ Defendant's argument that eight of the mailing counts must be dismissed because they precede the date the fraudulent scheme was allegedly hatched is without merit. 18 U.S.C.A. § 1341 plainly makes illegal the use of the mails while "intending to devise" a scheme to defraud. Those counts may accordingly be sustained if the government can

---

1. One might well disagree with the legislative judgment that thus downgrades a crime characteristically committed by the establishment. However it has not been suggested that any such consideration was urged before the Congress when it was considering the Travel Act.

prove at trial that the mailings in question were carried out with the requisite intent.

### III.

■ Defendant's third objection to the indictment is that the document itself was not adequately considered by the grand jury after having been drafted by the United States Attorney. Defendant does not contend that the grand jurors were denied the opportunity to study the indictment, but rather that—judging from the short time they had the actual document before them—they failed to avail themselves of that opportunity.

Defendant relies heavily on United States v. Gaither (1969) 134 U.S.App. D.C. 154, 413 F.2d 1061, for this contention. There the grand jurors as a group were never given an opportunity to see the indictment that they had voted to return, and the court condemned that practice, holding that "the grand jury as a body" must "pass on the actual terms of an indictment" (at 1071)

Assuming without deciding the correctness of that holding [2] its mandate was obeyed in the instant case and is in fact obeyed in all cases brought in the Southern District of New York, in that the indictment is always present in the jury room when the grand jury votes. By contending that the grand jurors must not only have an opportunity to pass on the indictment, but must in addition individually familiarize themselves with its actual language, defendant is inviting me to extend *Gaither* and undertake to monitor grand jury deliberations. This I decline to do. (*Cf.* United States v. Gower (5th Cir. 1971) 447 F.2d 187, at 189–190, cert. den. 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88.) [3]

### IV.

■ Defendant's fourth objection to the indictment is that it may have been voted by one or two jurors who did not hear her testify. It is established that two jurors were present on the day the indictment was voted who had been absent on the day defendant testified. Therefore if only twelve or thirteen jurors voted to indict, it is possible that one or even two critical votes were cast by jurors who had not heard defendant. Assuming this to have been so, I hold that it would not invalidate the indictment.

In United States ex rel. McCann v. Thompson (2 Cir. 1944) 144 F.2d 604, Judge Learned Hand discussed this very argument, and concluded that jurors who had been absent during some part of the hearings could properly vote to indict—at least when the accused did not appear (at 607). Defendant urges me to accept the negative pregnant inherent in Judge Hand's reasoning and hold fatal the absence of two jurors the day defendant testified—again assuming that the vote of at least one of those absentees had been necessary to indict. But Judge Hand also noted that a defendant has no right to appear before the grand jury (at 605). Since the jurors did not have to permit defendant to testify at all, they cannot be said to have wronged her if two out of twenty-

2. It might be noted that New York, a jurisdiction which considers the grand jury function as having the highest constitutional significance [People ex rel. Battista v. Christian, 249 N.Y. 314, 164 N.E. 111, Simonson v. Cahn, 27 N.Y.2d 1, 313 N.Y.S.2d 97, 26 N.E.2d 246] follows a practice much like that condemned in *Gaither*. This has not in any way compromised the grand jury's ability to act independently. Information furnished by the District Attorney of New York County establishes that over the past decade grand juries in that county have declined to indict in over ten per cent of the cases presented to them.

3. It must be emphasized that defendant's objection is solely to the brevity of the grand jury's perusal of the actual document and not—as indeed it could not be—to any inadequacy in its deliberations on the case itself. The jurors demonstrated the seriousness of their deliberations by voluntarily hearing the defendant herself and several witnesses offered on her behalf.

one may have been unable to be present when she did so.

### V.

Defendant's final objection to the indictment is that it represents an abuse of prosecutorial discretion. As defendant herself concedes, the courts very seldom review the exercise of prosecutorial discretion. The facts she alleges do not indicate any class discrimination upon which an equal protection argument might be predicated [*cf.* Oyler v. Boles (1962) 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446], nor any purposeful discrimination against her as an individual [*cf.* Moss v. Hornig (2d Cir. 1963) 314 F.2d 89]. Without some such allegation I have no authority to scrutinize the actions of the United States Attorney's office. Nor do I find anything in the record before me which would lead me to exercise such authority, if I could.

For the foregoing reasons, counts 1 and 26 through 48 of the indictment are dismissed. Counts 3–10, being barred by the statute of limitations, have been withdrawn by the government. Counts 11–25 remain.

It is so ordered.