UNITED STATES of America,
Plaintiff-Appellee,

v.

Keith A. MILLER, Defendant-Appellant.

No. 76–2024.

United States Court of Appeals,
Seventh Circuit.

Heard Nov. 11, 1977.

Decided Jan. 20, 1978.

Jason E. Bellows, Chicago, Ill., Michael Riley, Indianapolis, Ind., for defendant-appellant.

David T. Ready, U. S. Atty., South Bend, Ind., John R. Wilks, Fort Wayne, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and WYZANSKI, Senior District Judge.*

CUMMINGS, Circuit Judge.

Defendant Keith Miller appeals from a judgment and sentence entered upon a guilty verdict of a jury for violation of 18 U.S.C. § 1014, which prohibits knowingly making any false statement for the purpose of influencing in any way the action of an institution whose deposits are insured by the Federal Deposit Insurance Corporation.[1]

---

* The Honorable Charles E. Wyzanski, Jr., Senior District Judge of the District of Massachusetts, is sitting by designation.

1. In full, 18 U.S.C. § 1014 provides:
 "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Reconstruction Finance Corporation, Farm Credit Administration, Federal Crop Insurance Corporation, Farmers' Home Corporation, the Secretary of Agriculture acting through the Farmers' Home Administration, any Federal intermediate credit bank, or any division, officer, or employee thereof, or of any corporation organized under sections 1131–1134m of Title 12, or of any regional agricultural credit corporation established pursuant to law, or of the National Agricul-

tural Credit Corporation, a Federal Home Loan Bank, the Federal Home Loan Bank Board, the Home Owners' Loan Corporation, a Federal Savings and Loan Association, a Federal land bank, a joint-stock land bank, a Federal land bank association, a Federal Reserve bank, a small business investment company, a Federal credit union, an insured State-chartered credit union, any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation, any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, any member of the Federal Home Loan Bank System, the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or the Administrator of the National Credit Union Administration, upon any application, advance, discount, purchase, purchase agreement, re-

The statement by Miller on which the indictment and judgment were based grew out of a loan to Miller by the Anthony Wayne Bank of Fort Wayne, Indiana. In December 1974, the defendant borrowed $42,000 from the Anthony Wayne Bank in order to purchase 1750 shares of stock in the Carmel Bank & Trust Company, a newly formed bank in Carmel, Indiana, from a Fort Wayne podiatrist, Dr. Allen R. Martindale. The same 1750 shares of stock, which were evidenced by certificate numbers 219 through 232, were to serve as collateral for the $42,000 loan. During March 1975, the Anthony Wayne Bank renewed the $42,000 note, lent Miller an additional sum and consolidated the two loans into a $44,000 note, with the Carmel Bank stock certificates still serving as the primary collateral.

Shortly after renewing the March note in May 1975, representatives of the Anthony Wayne Bank discovered the stock certificates were not, as they had believed, in its possession. Although the Bank had been in possession of the certificates before the loans to Miller because Dr. Martindale had earlier borrowed from the Bank to purchase the same shares and had pledged them as collateral, upon the purchase of Martindale's shares by Miller the Bank had sent the shares to the transfer agent for the Carmel Bank for transfer of ownership from Martindale to Miller. Upon contacting the transfer agent, the Anthony Wayne Bank was advised that the agent had sent the stock certificates in December 1974 directly to Miller instead of returning them to the Bank. After unsuccessfully attempting to contact Miller in order to ascertain the whereabouts of the stock certificates, the Bank contacted Martindale, who furnished the Bank with a letter written by Miller stating that he had mailed the certificates to the Bank in December 1974. Miller himself later indicated to the Bank that he had mailed the certificates to the Bank and that if they had not been received then they must have been lost in the mail.

When the Bank explained this situation to the transfer agent for the Carmel Bank, he informed the Bank that he could reissue the 1750 shares but that before doing so he would require a security bond and an affidavit from Miller explaining the circumstances surrounding the loss of the shares. On August 6, 1975, Miller went to the Anthony Wayne Bank and swore out an affidavit stating *inter alia* that the 1750 Carmel Bank shares evidenced by stock certificates numbered 219 through 232 had not been assigned, pledged or otherwise disposed of, other than having been pledged as collateral to the Anthony Wayne Bank, and that the shares obviously had been lost in the mail. This affidavit was the subject of the indictment.

During the trial, representatives of two other banks testified that their banks had loaned Miller money on the basis of the foregoing certificates 219–232. The vice-president of the Indiana Bank & Trust Company of Fort Wayne reported that in January 1975 his bank loaned Miller $4,000 and took as security 200 shares of Carmel Bank stock evidenced by certificate 231. Subsequently, that bank loaned Miller an additional $5,000 and received as collateral certificates 222–224. The Indiana Bank & Trust Company had physical possession of these certificates on August 6, 1975, when Miller furnished his affidavit to the Anthony Wayne Bank. Similarly, as collateral for loans of $7,350, $4,000, and $14,000, issued between January and April 1975, Miller furnished to the Citizens Northern Bank of Elkhart, Indiana, Carmel Bank stock certificates numbered 219, 220, 221, 225, 226, 227, 228, 229, 230, and 232. These certificates remained in the custody of the Citizens Northern Bank until February 1976 and of course were in its possession when the critical affidavit was executed by defendant.

At the end of the two-day trial, the jury found Miller guilty of violating 18 U.S.C.

purchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release or substitution of

security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

§ 1014 on the basis of his August 6, 1975, affidavit. The district court later sentenced him to one year's imprisonment, with the first 40 days to be spent in a jail-type institution and the remaining time to be served on probation pursuant to 18 U.S.C. § 3651. On appeal, defendant argues that the evidence is insufficient to support the verdict, that the trial court erred in permitting the Government to cross-examine Miller concerning two previous financial statements, and that the court erred in refusing defendant's pretrial motion for a continuance. We disagree with each contention and therefore affirm.

### I. The Sufficiency of the Evidence

The essence of defendant's contention that the evidence is insufficient to support the verdict is that the Government offered no proof that Miller's August 1975 affidavit was intended to influence the action of the Anthony Wayne Bank within the meaning of 18 U.S.C. § 1014. Defendant asserts that the only testimony relevant to the issue of his intent was the statement of Howard Zimmerman, vice-president of the Anthony Wayne Bank, that Miller's loan would have been affected if the Bank had known that its collateral already had been pledged elsewhere; defendant therefore concludes that in the absence of evidence that these concerns were communicated to him or that he was aware of any problem other than a need for the Carmel Bank to reissue certificates, no support exists for the Government's theory that he made a false statement about his collateral for the purpose of keeping the Anthony Wayne Bank from recalling the loan.[2]

Although defendant is correct that no direct evidence of his intent was offered, proof of intent through the use of circumstantial evidence in such cases is not unusual (see *United States v. Braverman*, 522 F.2d 218, 220 (7th Cir. 1975), certiorari denied, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302) and here there is ample evidence to support the inference that Miller intended to influence the Anthony Wayne Bank as the Government contends. First, Miller knew that in lending him the $44,000 in March 1975 the Bank was relying upon the Carmel Bank certificates as collateral (Tr. 273–274). Second, Miller had considerable experience in dealing with bank loans using stock certificates as collateral, and admitted to being a stockbroker by trade (Tr. 265). In this context, even if the bank did not advise Miller of its concern about the loan,[3] the jury could infer that when the Bank inquired into the whereabouts of his collateral Miller was well aware of the ramifications of that inquiry, including possible cancellation of the loan.[4] See *United States v. Sheehy*, 541 F.2d 123, 127 (1st Cir. 1976); *United States v. Goberman*, 458 F.2d 226, 228 (3d Cir. 1972). Having drawn the inference that Miller knew what the results would be of presenting a truthful or false

---

2. Although the Government on appeal apparently relies solely on this theory of the case, it also may have been possible to satisfy the statutory elements by focusing on the statement in the affidavit that the certificates were lost in the mail and using that statement to satisfy the requirement of "influencing in any way" the Bank's action by noting that the statement may have delayed further investigation by the Bank or at least may have induced the Bank to seek reissuance of the shares. Because we find the Government's theory to be supported adequately by the facts of this case, we need not decide whether this alternate theory, for which the facts might have allowed intent to be proved more easily, meets the requirements of the statute. See *United States v. Tokoph*, 514 F.2d 597, 602–603 (10th Cir. 1975).

3. The Government did refer to testimony by Zimmerman stating that the purpose of the meeting with Miller "was to discuss the disposition of these loans and talk about the problem with the collateral" (Br. 6), but that reference did not indicate whether even this not wholly clear statement of the purpose of the meeting was communicated to Miller.

4. Defendant's contention that Zimmerman's testimony can not be dispositive of Miller's intent because it addresses only the Bank's intention and not what Miller was thinking (see *United States v. Kay*, 303 U.S. 1, 5–6, 58 S.Ct. 468, 82 L.Ed. 607) does not undercut the fact that the testimony was relevant to the question of what result (here possible cancellation of the loan) a person knowledgeable in the field such as Miller could expect when a bank learns it is not in possession of its collateral.

statement as to the whereabouts of the certificates (even without reference to Miller's past dealings with banks discussed in Part II *infra*), the jury justifiably could conclude that Miller offered the false affidavit with the intent of influencing the Bank to refrain from calling the note or taking a similar step adverse to him. See *United States v. Sheehy, supra.*

## II. The Cross-Examination Based on Past Financial Statements

Tied to defendant's argument that the evidence is insufficient to establish intent is his position that financial statements used by the Government in cross-examining Miller and admitted by the district court on the ground that they were relevant to his intent[5] should not have been admitted under Rules 404(b) and 403 of the Federal Rules of Evidence. The financial statements consist of one sheet with questions on each side seeking information about the assets of an applicant for a loan. The two statements whose introduction is challenged on this appeal both were filled out by Miller and were dated December 7, 1974, but were submitted to different banks. Several answers to questions on the form submitted to the Citizens Northern Bank of Elkhart differ from answers to the same questions on the form submitted to the Carmel Bank, and the sums given for total assets differ by over $117,000. Although not challenged by defendant nor discussed by either party on this appeal, also in evidence was a third financial statement filled out by Miller when he applied for the December 6, 1974, Anthony Wayne Bank loan that was the basis of the indictment. That statement, dated in the Bank's files as December 3, 1974, was introduced prior to the cross-ex-

amination of Miller and contains a third set of figures that differs in part from both of the December 7 statements (Tr. 50) and seems to have been used by the Government in conjunction with the other two statements during Miller's cross-examination (Tr. 262–263, 268–269, 271).

In response to the Government's contention that the two challenged statements to the Elkhart and Carmel banks are relevant to intent because as statements made for the purpose of inducing those banks to grant loans they indicate how the defendant deals with banks, defendant argues first that the statements are inadmissible under Rule 404(b) because there was no proof that they were false and second that given their remoteness in time from the August 6, 1975, indictment affidavit and their potential for prejudice, their relevance is outweighed by their prejudicial effect and therefore they should have been excluded under Rule 403.

Defendant's objection based on the lack of proof of falsity is without merit for two reasons. First, defendant does not explain why Rule 404(b) requires that the two statements be proven false in order for them to be admissible to prove intent. In fact, the structure and language of the Rule indicate that it includes conduct that is neither criminal nor wrongful: the Rule is concerned with "character evidence" in general and the operative clause deals with the admissibility of "other crimes, wrongs, *or acts.*" Fed.R.Ev. 404(b) (emphasis added). The addition of the words "or acts" demonstrates an intention to include within the coverage of Rule 404(b) items such as the financial statements here.[6] Second, assum-

---

**5.** The district court also offered as reasons for admitting the statements their relevance to the issues of knowledge and credibility.

**6.** In fact, the inclusion of non-wrongful acts within Rule 404(b) has the effect of aiding criminal defendants and can hardly be viewed as being detrimental to defendant Miller in this case. Because non-wrongful acts apparently are included within the Rule, they are "not admissible to prove the character of a person in order to show that he acted in conformity

therewith" (Rule 404(b)), in addition to being inadmissible if not relevant or fatally prejudicial under Rules 401 and 403. If these acts were not included in Rule 404(b), it could be argued under Rule 402 that they are admissible for any purpose, with relevance and prejudice as the sole limits on their admissibility. Thus the addition of "or acts" simply broadens the class of items that cannot be admitted to show a defendant's propensity to commit crime. Miller's concern about the introduction of acts not proven to be wrongful therefore arises not

ing proof of falsity or some culpability were required, that requirement appears to have been met in this case. The statements themselves and the focused discussion about them in Miller's cross and redirect examinations provide sufficient support for a finding that at least one of the statements was false or at the very least that Miller made careless misrepresentations.

Nor is there merit in defendant's argument that admission of the statements was improper because the relevance of the statements is outweighed by their prejudicial effect. Looking first to the probative worth of the statements, defendant has underestimated their relevance in light of the existing precedents. In *United States v. Kaufman*, 453 F.2d 306 (2d Cir. 1971), for example, a process server was charged with making false affidavits by representing that the intended recipients of process were not in military service. The process server's defense in part was that he had not intended to deceive anyone and did not know that the statements were false. On cross-examination, the Government introduced the process server's income tax return, which contained a false statement. The Second Circuit's response to the argument in *Kaufman* that the tax form was inadmissible is particularly pertinent to Miller's objection here, especially in light of Miller's trial testimony that he signed the affidavit without reading it because Dr. Martindale told him to sign it (Tr. 244). As Judge Anderson's majority opinion notes, "evidence that the defendant had signed legal documents relating to his own personal affairs was relevant to rebut his testimony in which he characterized himself as \* \* \* beguiled \* \* \* into unknowingly signing false affidavits." 453 F.2d at 311.[7] See also *United States v. Scharf*, 558 F.2d 498, 501 (8th Cir. 1977).

Admission of Miller's financial statements is even easier to justify than the admission of the tax return in *Kaufman* because here the false statements, which were made to two banks in the course of loan transactions, are more closely related to the present offense of swearing a false affidavit to a bank concerning a loan than were the tax returns in *Kaufman* to the offense of false affidavits concerning the service of process. Moreover, the fact that one of the three potentially false statements was made to the Anthony Wayne Bank may make that statement even more relevant than the other two because it indicates the defendant's way of dealing with the same people and in the same transaction as involved in the affidavit that prompted the indictment.

Just as Miller thus underestimates the relevance of the financial statements, he also overrates their prejudicial effect. While damaging to the defendant, the false statements have little inflammatory content because inconsistent or false statements in loan applications are not the sort of misconduct that ordinarily arouses the irrational passions of a jury. See *United States v. Leonard*, 524 F.2d 1076, 1092 (2d Cir. 1975), certiorari denied, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202; *United States v. Kaufman, supra,* at 311. Given the relevance of the statements and their limited prejudicial effect, the district court did not commit error under Rule 403 in admitting these statements.

In addition, any prejudicial effect may have been reduced by the following limiting instruction about them given by the district court:

"I want to instruct the Jury that those are not exhibits which are in any way relevant to the guilt or innocence of the

---

under Rule 404(b) as he contended but rather as a claim of possible prejudice under Rule 403 or as a claim that because the act was not wrongful it is not sufficiently similar to be relevant under Rules 401 and 403.

**7.** Judge Feinberg dissented on a different issue. Although the opinion was written before the adoption of the Federal Rules of Evidence, it

uses the same standards that the Rules later mandated: it first asks whether the evidence "is substantially relevant for a purpose other than merely to show defendant's criminal character or disposition" and then inquires whether "the likelihood of prejudice outweighs its probative value." 453 F.2d at 310, 311.

offense charged. They are admitted solely limited to the question of intention, knowledge, and credibility. They have no weight in the manner used or the guilt or innocence of the Defendant on the substantial charge."

Unfortunately, the second sentence of this instruction seems to contradict the first and third because the intention issue discussed and deemed relevant in the second sentence is in fact a component part of the question of guilt or innocence discussed in the first and third sentences and therefore cannot be irrelevant to the guilt issue as the first and third sentences claim. Although it therefore would have been better to instruct the jury by using the language of Rule 404(b),[8] the district court's instruction seems open only to two interpretations: that the exhibits were irrelevant entirely or that their relevance was limited to the intent question. Thus the instruction, while confusing, could not have prejudiced the defendant. In the absence of objection to the instruction below or even in this Court and in light of the relevance and limited prejudicial effect of the exhibits, the instruction at the least does not undercut our conclusion that it was not error to admit the financial statements.

### III. *The Denial of the Continuance*

On July 19, 1976, two days before trial, defendant's attorney, William D. Hall, filed a withdrawal of appearance at defendant's request and Michael Riley, an attorney retained by the defendant on July 19, moved for a continuance to allow him time to prepare the case. The motion for continuance offered as its main rationale the assertion that Hall "was mainly engaged in the practice of collection in commercial law and is not primarily in the practice of criminal law." The district court declined to grant a continuance and refused to let Hall withdraw, so that the trial took place on July 21 and 22 with both Hall and Riley representing the defendant. No objection is raised here against Hall's presence at trial, but defendant does challenge the district court's decision denying the continuance.

 It is well established that such decisions are left to the discretion of the trial court and are not reversed except upon a showing of abuse of that discretion. *United States v. Jones*, 369 F.2d 217, 220 (7th Cir. 1966), certiorari denied, 386 U.S. 944, 87 S.Ct. 976, 17 L.Ed.2d 875; *United States v. Fuentes*, 432 F.2d 405, 407–408 (5th Cir. 1970), certiorari denied, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 822; 3 Wright & Miller, *Federal Practice and Procedure* § 832; see *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377. Although we have found no reported case discussing a trial court's exercise of discretion in this precise situation, decisions in analogous cases indicate that the district court's denial of the motion here was not an abuse of its discretion. In *United States v. Gower*, 447 F.2d 187, 190 (5th Cir. 1971), certiorari denied, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88, for example, Judge Wisdom's opinion for the Court upheld the denial of a continuance when one of defendant's attorneys was disqualified one month before trial and another withdrew three days before trial, reasoning that defendant's new trial counsel, in conjunction with the disqualified chief counsel who was allowed to assist, conducted an able and vigorous defense. Similarly, in *United States v. Upshaw*, 448 F.2d 1218 (5th Cir. 1971), certiorari denied, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810, a denial of a continuance was held not error despite the fact that the defendant wanted to change attorneys five days before trial

---

**8.** The standard instruction reduces but may still suffer from the same potential for confusion. The pertinent part of Devitt & Blackmar, Federal Jury Practice and Instructions § 14.14 (3d ed. 1977) states that "the fact that the accused may have committed an offense at some time is not any evidence or proof whatever that, at a later time, the accused *committed* the offense charged in the indictment, even though both offenses are of a like nature" (emphasis added). To the extent that the phrase whether "the accused committed the offense" implies to the jury a decision only on the *actus reus* and not on the *mens rea*, this standard instruction is less confusing than the reference to the defendant's guilt that was used by the district judge here.

and his new attorney would be unavailable at the scheduled trial date due to hospitalization. As a result of the denial, defendant Upshaw was represented instead at trial only by the attorney who had represented him in an earlier mistrial and whom Upshaw had sought to dismiss.

In this case, unlike *Gower* and *Upshaw*, defendant had the benefit of the participation of each attorney that he had retained. Although not stressed by *Gower* or *Upshaw*, also significant is the fact that Miller's objection to his first attorney that prompted the request for a continuance—Hall's lack of criminal experience—was not the type of problem that had to be raised immediately before trial but rather could have been resolved easily at a time and in a manner that would have made a continuance unnecessary. See *United States v. Redwitz*, 328 F.2d 395, 398 (6th Cir. 1964). Finally, defendant has made no attempt on this appeal to demonstrate any harm resulting from lack of preparation or incompetence. See *United States v. Fannon*, 403 F.2d 391, 393 (7th Cir. 1968), vacated on other grounds, 394 U.S. 457, 89 S.Ct. 1224, 22 L.Ed.2d 416; *United States v. Gower, supra*. On these facts and in light of the analogous precedents, the denial of the continuance was not an abuse of discretion.

For these reasons, none of defendant's contentions is meritorious and his conviction must be affirmed.

FAIRCHILD, Chief Judge, concurring.

I concur in the result and Parts I and III of the order. With respect to Part II, I have serious difficulty with the propriety of admitting false financial statements made to several banks in December as proof of intent, plan, knowledge or absence of mistake, in making a false statement on a wholly different subject to one of the banks in the following August. I would prefer to reject this claim of error with the response that the evidence of having knowingly made the false statement in August for the purpose of influencing the bank was so clear that any error in admitting the December statements was harmless.